IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

WINFIELD SOLUTIONS, LLC,

        Plaintiff,

v.

W S AG CENTER, INC., WALLACE K. GANSKE and JULIE L. GANSKE,

        Defendants.

OPINION AND ORDER

17-cv-942-slc

---

In this action arising under the court's diversity jurisdiction, plaintiff Winfield Solutions, LLC, an agricultural product supplier, has sued defendant W S AG Center, Inc. ("WSAG") and its owners, W. Kent[1] and Julie L. Ganske, seeking to collect more than $1 million in unpaid invoices and late payment fees for agricultural product delivered to and accepted by WSAG. Complaint, dkt. 1. Winfield asserts causes of action against WSAG for recovery of the balance of the purchase price due for the products and for breach of contract (Counts 1 and II), and against the Ganskes for enforcement of guaranties they executed promising to pay all amounts due under the invoices (Count III).

Winfield has moved for summary judgment, seeking an award of $1,451,535.37 in unpaid purchases and late charges due up to January 1, 2019, plus an award of additional late charges at the rate of $550.27 per day from January 1, 2019 through the date of entry of judgment. Dkt. 19. Defendants admit that WSAG owes Winfield more than $1 million plus late fees for unpaid invoices, and they can't genuinely dispute that the Ganskes are jointly liable

---

[1] Although named as "Wallace K. Ganske" in the Summons and Complaint, W. Kent Ganske did not refuse service and he answered the complaint, even though he avers that he has always gone by "W. Kent Ganske" and not "Wallace K. Ganske." Thus, there is no dispute that, for purposes of this lawsuit, "Wallace K. Ganske" and "W. Kent Ganske" are the same person. However, plaintiff should amend the caption to clear up any confusion.

for the debt. Instead, they argue that WSAG is entitled to an offset equal to the value of its equity stake in two "base capital" accounts that WSAG has with Winfield. As discussed below, defendants' offset theory is not supported by either the facts or the law. Accordingly, I am granting Winfield's motion for summary judgment.

A preface to the court's findings of fact: Winfield moved for summary judgment on both liability and damages. Winfield has supported its proposed findings of fact with admissible evidence establishing the essential elements of its claims and damages. Dkts. 19, 20. In their response, WSAG and the Ganskes offer only boilerplate, general denials that fail to put into dispute Winfield's proposed facts as required by Section II D. of this court's Procedure to be Followed on Motions for Summary Judgment. Dkt. 31. Moreover, defendants did not support any of their responses with citations to admissible evidence in the record, as required by Section II E. of this court's procedure, nor did they propose their own facts.[2] As a result, Winfield's proposed facts are undisputed. *Accord Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1313 (7th Cir. 1995) (failure to properly contest factual assertions under local rules constitutes binding admission of those facts).

UNDISPUTED FACTS

**I. WSAG's Purchases of Product from Plaintiff**

Defendant W S AG Center, Inc. ("WSAG") is a Wisconsin corporation with its principal place of business located in Darlington, Wisconsin. WSAG is owned by defendants W. Kent

---

[2] The only evidence submitted by defendants is an affidavit from W. Kent Ganske, dkt. 30, which they attach to and rely on in their brief. As discussed below, Ganske's affidavit, even if considered, fails to raise any genuine material disputes sufficient to preclude summary judgment.

Ganske and Julie Ganske. The Ganskes reside in Sun Prairie, Wisconsin and are citizens of the State of Wisconsin.

WSAG buys agricultural products for resale to farmers in Wisconsin. For many years, WSAG bought product on credit from United Suppliers, Inc., an Iowa cooperative corporation that distributes agricultural products. WSAG became an owner of the co-op and built equity through its product purchases, which it bought on credit.

Specifically, in 2006, 2009 and 2012, WSAG executed Credit Applications under which it agreed to timely pay United Suppliers' invoices or face late charges at a rate of 1.5 percent per month or 18 percent annually.[3] To secure WSAG's account debt, on May 1, 2006 the Ganskes executed and delivered to United Suppliers a personal guaranty to pay all amounts due or to become due by WSAG to United Suppliers. Ledger Aff., dkt. 22, Exh. C.

In October 2015, United Suppliers partially merged with Winfield US Holdings, LLC, a holding company formed by the plaintiff in this case, Winfield Solutions, LLC ("Winfield").[4] On March 15, 2016, the Ganskes executed another personal guaranty in which they guaranteed payment of all amounts due or to become due by WSAG to United Suppliers and/or Winfield. Ledger Aff., dkt. 22, Exh. D. On October 1, 2017, United Suppliers completed its merger with Winfield Holdings; on that same date, Winfield Holdings merged into Winfield. Thus, United Suppliers merged into and became Winfield on October 1, 2017.

---

[3] An 18 percent annual interest rate on overdue payments is common in the commercial agricultural sector.

[4] Winfield is a Delaware limited liability company. Its parent company and sole member is Land O' Lakes, Inc., which is a Minnesota cooperative corporation with its principal place of business in Arden Hills, Minnesota.

WSAG continued to order product on credit from United Suppliers/Winfield after the merger, but fell behind on its payments in February 2016 and never caught up.  WSAG failed to pay for $1,087,332.83 worth of certain products that it purchased from United Suppliers and Winfield between February 10, 2016 and March 8, 2017.  As of January 1, 2019, the total amount of late charges on the balance due, calculated at the rate of 18% annually, is $364,202.54; late charges continue to accrue at the rate of $550.27 per day.

## II. Plaintiff's Patronage Program

United Suppliers, now Winfield, offers a program by which its members, including WSAG, acquire equity, or "base capital," in the cooperative based on patronage.  Patronage is tracked separately for members' purchases of crop-nutrient products (*e.g.* fertilizer) and crop-protection products (*e.g.* herbicides), and there are separate base capital accounts for crop-nutrients and crop-protection.  Accumulation and payment of patronage is governed by United Suppliers' bylaws and policies issued by its board of directors.

United Suppliers distributes patronage annually either by issuing cash refunds, adding to a member's base capital accounts, or both.  The amount of patronage actually paid to a member in cash versus added to the member's base capital account depends upon the amount in the member's base capital accounts.  Patronage distributions are allocated to members with a balance of 0 - $50,000 in a 30/70 split, with 30 percent distributed in cash and the remaining 70 percent added to their base capital account.  Members with a base capital balance between $50,001 and $249,999 receive their patronage in a 75/25 split, and members with a base capital balance of $250,000 or more are paid 100 percent of their patronage in cash.  United Suppliers

4

sent Patronage Refund Summaries and Base Capital Summary Reports to WSAG each year from 2014-2016 that showed the balance in WSAG's two base capital accounts and any cash rebates earned.

Under Section 8.5 of United Suppliers' Amended and Restated Bylaws, a member who wants to redeem its base capital must provide a written notice to United Suppliers. Redemption of base capital is subject to redemption policies adopted by United Suppliers' Board of Directors. United Suppliers' last redemption policy, which was adopted by Winfield when it merged with United Suppliers in 2017, was set forth in a brochure entitled "StepCash Base Capital Program." This brochure was distributed to all of United Suppliers' members, including WSAG. Under the program, payments of qualified base capital are distributed to members requesting redemption pursuant to the following schedule:

   a. Zero payments for the first two years;

   b. Payments equal to 10% of the base capital during the third through sixth years;

   c. Payments equal to 15% of the base capital during the seventh through ninth years; and

   d. A payment equal to the balance of the base capital during the tenth year. Payments of non-qualified base capital are paid to members on the tenth year after a redemption request.

However, the bylaws permit the company's offers to accelerate the payout of any member's base capital account "[i]f in the opinion of the Management Team such acceleration is in the best interests of the Company."

WSAG has $250,000 in its crop-protection base capital account and $57,667 in its crop-nutrients base capital account. WSAG has never provided United Suppliers, Winfield or Land O'Lakes with any written redemption notice.

OPINION

**I. Summary Judgment Standard**

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). *See also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. "As the 'put up or shut up' moment in a lawsuit, summary judgment requires a non-moving party to respond to the moving party's properly-supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trustees of Indiana University*, 870 F.3d 562, 568 (7th Cir. 2017).

## II. WSAG is Liable for the Balance of the Purchase Price

Winfield's first cause of action is for recovery of the price under the Uniform Commercial Code. Under the Code, "[t]he buyer must pay at the contract rate for any goods accepted." Wis. Stat. § 402.607(1). "When the buyer fails to pay the price as it becomes due the seller may recover . . . the price . . . [o]f goods accepted . . .". Wis. Stat. § 402.709(1)(a). Acceptance of goods occurs when, among other things, the buyer fails to effectively reject the goods or does any act inconsistent with the seller's ownership of the goods. Wis. Stat. § 402.606(1). Winfield's second cause of action is for breach of contract, which requires it to prove: (1) a valid contract; (2) breach of the contract by the defendant; and (3) damages resulting from the breach.[5] *See, e.g. Brew City Redevelopment Grp. v. Ferchill Grp.*, 2006 WI App 39, ¶11, 289 Wis. 2d 795, 714 N.W.2d 582 (the elements of breach of contract are: the existence of a contract, the failure of a party to undertake what the party agreed to do, and damages).

Winfield is entitled to summary judgment on both the UCC and breach of contract claims. Defendants admit WSAG received and accepted the products for which Winfield seeks payment. They admit WSAG executed Credit Applications under which it agreed to pay United Suppliers its invoices according to terms. They do not dispute that, as United Suppliers' successor-in-interest, Winfield is entitled to enforce the credit agreements and recover the unpaid purchase price for the products. Finally, they do not dispute that the balance due on the unpaid invoices is $1,087,332.83.

---

[5] Defendants do not object to Winfield's claim that Wisconsin law governs the parties' dispute. Accordingly, I will apply Wisconsin law without further analysis. *Auto–Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009) ("Courts do not worry about conflict of laws unless the parties disagree on which state's law applies.") (citation omitted).

7

Defendants raise two objections to the total amount sought by Winfield. First, they argue that WSAG is entitled to redeem or offset the funds in its base capital accounts. Second, they assert that the 18 percent interest rate is unconscionable. As discussed below, both arguments fail.

## III. WSAG Is Not Entitled to an Offset From Its Base Capital Accounts

Defendants ask this court to offset any award of damages by $307,667, which represents the sum of the balances in the two "base capital" accounts that WSAG has with Winfield. To the extent defendants' offset theory is grounded in the UCC, it fails: the UCC permits a buyer only to "deduct all or any part of the damages resulting from any breach of the contract from any part of the price still due *under the same contract*." Wis. Stat. Ann. § 402.717 (emphasis added). In other words, the breach for which the buyer seeks an offset "must be of the same contract under which the price in question is claimed to have been earned." UCC Comment 1, Wis. Stat. § 402.717; *C. R. Bard, Inc. v. Med. Elecs. Corp.*, 529 F. Supp. 1382, 1387 (D. Mass. 1982) ("[F]or a buyer to invoke § 2–717, the asserted breach must go to the essence of the transaction under which the seller seeks to recover his price."); *Columbia Gas Transmission Corp. v. Larry H. Wright, Inc.*, 443 F. Supp. 14, 20 (S.D. Ohio 1977) (UCC § 2-717 "is not a general set-off provision permitting a buyer of goods to adjust its continuing contract obligations according to the equities perceived by the buyer.").

WSAG is not entitled to an offset under Wis. Stat. § 402.717 for two reasons. First, WSAG has not shown that the funds in the base capital accounts were part of the same transactions for which Winfield is seeking to recover. Winfield's claim for recovery of the

8

purchase price is based upon 28 invoices that were issued to WSAG between February 2016 and August 2017. Dkt. 22, Ledger Aff., at 3, ¶ 10, and Exhs. E-F. With the exception of $161 that appears to have accrued some time between October 1, 2015 and September 30, 2016, the patronage funds to which WSAG claims to be entitled from its base capital accounts accrued before February 2016. Dkt. 22, Exhs. R-T. Thus, contrary to the unsupported assertion in its brief, *see* dkt. 29, at 6, these funds could not have arisen from the 28 purchase transactions at issue in this case. Indeed, it is unclear how WSAG could have earned patronage from purchase orders for which it never paid.

Second, WSAG has not adduced facts to show that the offset it is seeking stems from any breach related to the 28 purchases. Kent Ganske simply avers that he was not told by "any representative of United Suppliers" that WSAG would have two, separate base capital accounts that each needed to reach $250,000 before he would be entitled to receive 100 percent of his rebates in cash. Ganske Aff., dkt. ¶¶ 6, 9. To the extent that Ganske is suggesting that plaintiff's representatives misled him about how the base capital accounts worked, he does not explain how this alleged misrepresentation constitutes a breach of United Suppliers/Winfield's obligations with respect to any of the 28 purchase transactions at issue. Certainly, WSAG does not cite to any evidence indicating that United Suppliers' policy regarding patronage equity caused WSAG to incur a debt of more than $1 million to the co-op.

Even so, argues WSAG, simple logic dictates that WSAG should be allowed to reduce the amount it owes to Winfield for unpaid product by the amount that Winfield owes WSAG from the base capital accounts. Br. in Opp., dkt. 29, at 6. The problem with this argument is that, at present, Winfield doesn't "owe" WSAG anything. First, WSAG has not filed a written

request to redeem its equity stake, as required by the cooperative's bylaws. Second, as Winfield points out, a member's interest in a cooperative is not debt, but rather is an equity investment payable only as called for in the cooperative's articles and bylaws. *Vetrone v. Coop. Care*, 2014 WI App 24, ¶ 32, 352 Wis. 2d 754, 843 N.W.2d 711 ("holders of equity credit are not creditors") (unpublished disposition); *Mitchellville Co-op v. Indian Creek Corp.*, 469 N.W. 2d 258, 262-63 (Iowa Ct. App. 1991) (co-op member has no right to a setoff of patronage equities against a debt owed to the co-op); *Atchison Cty. Farmers Union v. Turnbull*, 241 Kan. 357, 363, 736 P. 2d 917, 922 (1987) (trial court's decision to override co-op's board of directors and grant equitable setoff to member was contrary to public policy). The decision whether to permit a member to redeem or setoff patronage funds against a debt is a matter squarely within the discretion of the cooperative's board of directors. *Vetrone*, at ¶ 32; *Mitchellville*, 469 N.W. 2d at 263. The board has a fiduciary duty *not* to distribute any assets of the cooperative to redeem equity credit "when it determines that the economic situation of the cooperative would be imperiled thereby." *Vetrone*, at ¶ 32; *Mitchellville*, 469 N.W. 2d at 262 ("[T]here is no logical ground upon which a member should be permitted to withdraw his interest at the expense of disturbing the financial condition or life of the association.")(quoting *Turnbull*, 241 Kan. at 362, 736 P. 2d at 922). In general, courts will not review a cooperative's refusal to redeem or setoff patronage funds absent a showing of abuse of discretion, fraud or illegality. *Mitchellville*, 469 N.W. 2d at 263.

Defendants have not shown any basis for this court to override the apparent refusal of Winfield's officers to accelerate WSAG's redemption of its equity funds. As just noted, WSAG has not yet filed a written redemption notice, so it is not even clear that WSAG's redemption

10

request is properly before the board. But even assuming a formal request has been made, there is nothing in this record to suggest any fraud or abuse of discretion by Winfield.

In his affidavit, dkt. 30, W. Kent Ganske avers that he was promised by representatives from United Suppliers that he could cash out his $250,000 equity interest in the crop-protection base capital account at any time (¶¶ 11, 15); he "did not ever agree" to earn equity in the crop-nutrient account (¶ 18); and he did not receive the cooperative's bylaws and no one reviewed them with him (¶ 14). Ganske does not identify who told him he could redeem his base capital funds whenever he wished, or when, where or how he or she made these statements. Ganske's assertion that someone from United Suppliers, at some time, somewhere told him he could pull out his equity stake whenever he wanted is wholly inadequate to defeat summary judgment. *Hedberg v. Indiana Bell Tel. Co., Inc.*, 47 F.3d 928, 931 (7th Cir. 1995) ("Conclusory allegations by the party opposing the motion cannot defeat the motion); *Barlass v. City of Janesville*, 2011 WL 13187131, *12 (W.D. Wis. 2011)(plaintiff could not defeat motion for summary judgment with "vague and conclusory allegations" that did not contain basic who, what, when and why information), *aff'd*, 483 Fed. Appx. 261 (7th Cir. 2012).

Moreover, whether Ganske read the bylaws or not, members of a cooperative are "charged with knowledge of" and "bound by" the terms of the cooperative's articles and bylaws regarding payment of cooperative equities. Am. Jur. 2d, Cooperative Associations § 16 (2018) (validly adopted bylaws of a cooperative association are binding upon both the association and its members, even in absence of specific contract to that effect); *Turnbull*, 736 P. 2d at 921 (bylaws are a contract between the cooperative and its members and govern transactions between them); *O'Leary v. Board of Dirs., Howard Young Med. Ctr., Inc.*, 89 Wis.2d 156, 169, 278 N.W.2d 217

11

(Ct. App. 1979) ("bylaws and articles of incorporation of a corporation form a binding contract between the members and the corporation"); *Claassen v. Farmers Grain Coop.* 490 P.2d 376, 380 (Kan. 1971) (when member joins a cooperative association, he is charged with knowledge of its articles of incorporation and bylaws).

Those bylaws describe the crop-nutrients base capital account and how patronage allocations will be made. Dkt. 22, Exh. Z, at 16. Moreover, although Ganske claims he did not know about the crop-nutrient base capital account, he does not deny that United Suppliers sent a Base Capital Summary Report on January 15, 2015 that showed the existence of equity funds in this account; he does not deny receiving it; and he does not say that he complained to anyone about the funds in this account until plaintiff started collection efforts in mid-2016. Thus, his suggestion that United Suppliers withheld funds against his will has no support in the record.

Finally, defendants argue that the cooperative's bylaws are unconscionable because they grant United Suppliers the sole discretion to determine whether to accelerate payments of base capital, while at the same time failing to provide for payment of interest on base-capital accounts. As previously explained, however, a member's equity interest is not a debt for which interest must be paid. Moreover, the bylaws of a cooperative association are different than an arms' length contract between two independently-operating entities. Cooperative associations are formed to provide economic services for the mutual benefit of their shareholders and members. Am Jur. 2d., Cooperative Associations, Summary (2018). The provisions in the bylaws calling for an orderly payout of base capital over time is necessary to *protect* members; if members could force immediate payment of their equities upon demand, then the cooperative could be forced out of business or become financially imperiled. Thus, in the context of an

agricultural cooperative association, the restrictions on equity payouts are not unconscionable. Rather, they are logical, reasonable and necessary.

In sum, defendants have not come forth with admissible evidence to show that this is a rare case in which the court should usurp the decision-making authority of Winfield's corporate officers, who are presumed to be exercising their best business judgment and acting to protect the interests of *all* of its members. WSAG is not entitled to an immediate setoff of the funds in its base capital accounts against the debt it owes to Winfield.


**IV. The 18 Percent Interest Rate for Late Charges is Reasonable**

Defendants admit that WSAG agreed to an 18 percent per year interest rate in the Credit Applications and further admit that such a rate is permitted under Wisconsin law. *See* Wis. Stat. § 138.04 (when interest rate higher than 5 percent is imposed upon a party, rate shall be "clearly expressed in writing"). In fact, as plaintiff points out, Wisconsin courts routinely allow creditors to recover interest at the rate of 18 % per year where that rate is called for under the terms of a written contract between commercial parties. *See, e.g., Advance Concrete Forms, Inc. v. McCann Const. Specialties Co.*, 916 F.2d 412, 416 (7th Cir. 1990), and cases cited in plaintiff's reply, dkt. 33, at 4. Indeed, WSAG charges *its* customers at a rate of 18 percent annual interest on past-due amounts. The interest rate of 18 percent per year is reasonable.


**V. The Ganskes Are Liable Under the Guaranties**

Finally, defendants argue that Winfield cannot enforce the Ganskes' guaranties because they did not consent to the assignment of the guaranties from United Suppliers to Winfield.

13

Br. in Opp, dkt, 29, at 2; Ganske Aff., dkt. 30, ¶ 23. This argument has no merit. When a merger occurs, contract rights possessed by a corporation or other entity that merges into the survivor vest in the survivor "without reversion or impairment." Iowa Code § 490.1107(1)(c); *accord* 6 Del. Code § 18-209(g). Thus, when United Suppliers merged into Winfield, the May 1, 2006 Guaranty became vested in Winfield as a matter of law. As for the March 15, 2016 Guaranty, it was provided by the Ganskes directly to Winfield, not United Suppliers. Both guaranties are enforceable.

ORDER

IT IS ORDERED that plaintiff Winfield Solutions, LLC's motion for summary judgment, dkt. 19, is GRANTED in its entirety. Plaintiff is directed to submit a proposed judgment to the court not later than May 13, 2019, with any objections by defendants due not later than May 20, 2019. .

Entered this 29th day of April, 2019.

BY THE COURT:

/s/
_____
STEPHEN L. CROCKER
Magistrate Judge

14